IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERVIN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv0410-VPM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ervin Johnson ["Johnson"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2000). Upon review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

On 21 December 2001, Johnson filed applications for Disability Insurance Benefits (R. 46-48) and Supplement Security Income alleging that, despite not working since December 2000 (R. 67, 73), he became unable to work as of 9 September 2001 due to "high blood pressure[,] . . . rapid heart rate[,] . . . [and] gastric & acid reflux" (R. 66). Johnson, who is 47 years old, is college educated and worked for 15 years as a "juvenile detention sup[ervisor]" (R. 57).

Johnson's application was denied initially (R. 29-30), and a hearing before

Administrative Law Judge ["ALJ"] Frank M. Klinger resulted in a partially favorable decision (R. 18-27). The ALJ determined that Johnson had been disabled from 1 September 2001 until 9 September 2002 (R. 25-27).

After reviewing additional evidence not submitted to the ALJ, the Social Security Administration's Appeals Council denied Johnson's request for review (R. 4-7), thus rendering the ALJ's opinion the final decision of the Commissioner. Johnson then filed this timely lawsuit (Doc. # 1), which challenges the ALJ's decision to award benefits for only a closed period.

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." **Miles v. Chater**, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence

---

[1]   In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See* **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842

of substantial evidence "contrary to the findings of the ALJ." **Barron v. Sullivan**, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." **Miles**, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled, which means that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that he is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether he suffers from a severe impairment that has lasted or is expected to last

(1971).

12 months or more. §§ 404.1509, 416.909, 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify him for disability benefits, the ALJ must then assess his residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [his] limitations." §§ 404.1545(a), 416.945(a). Considering his RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of his past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering his RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

> 1. The claimant met the disability insured status requirements of the Act on September 1, 2002, the date he stated he became unable to work, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial activity since September 1, 2002.

3. The medical evidence establishes that the claimant has a severe impairment due to obesity, history of elevated hypertension currently controlled, gastroesophageal reflux disease and minimal pulmonary disease. He does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The subjective complaints, to the extent that they are inconsistent with the residual functional capacity given below, are not substantiated by the record and are not credible.

5. From September 1, 2001 until September 9, 2002, the claimant's impairments precluded the performance of work activity on a regular and sustained basis.

6. From September 2, 2001 until September 9, 2002, the claimant was unable to return to his past relevant work.

7. From September 1, 2001 until September 9, 2002, the claimant was unable to perform a significant number of jobs in the national economy (Social Security Ruling 96-8p).

8. The claimant was under a disability from September 1, 2001 until September 9, 2002.

9. As of September 9, 2002, the claimant improved medically.

10. As of September 9, 2002, the claimant has had the residual functional capacity to perform light and sedentary work activity with the following limitations: mild to moderate pain and no excessive exposure to dust, fumes and gases.

11. As of September 9, 2002, the claimant has been able to perform his past relevant work as a correction [sic] supervisor and other jobs existing in significant jobs [sic]

>    12.   The claimant was under a "disability," as defined in the Social Security Act, from September 1, 2001 until September 9, 2002, but not thereafter.

(R. 26-27).

Thus, Johnson failed in part because the ALJ determined that, despite suffering from disabling impairments for approximately one year, as of 9 September 2002, his condition did not prevent him from returning to his previous job or performing the responsibilities of other jobs available in significant numbers in the regional and national economies.

Johnson disagrees and contends that the ALJ's opinion is not supported by substantial evidence in the record. Specifically, Johnson contends that the ALJ did not properly evaluate his subjective complaints and failed to consider his impairments in combination. Both arguments lack merit.

### C.   *Johnson's Subjective Complaints*

As Johnson states in his brief,

> At his hearing, [he] testified to having severe headaches everyday [sic] or every other day and that these headaches can last for days. (R. 163-164). He has to lie down frequently due to these headaches. (R. 164). The pain causes nausea and dizziness and has [sic] severe episodes of shortness of breath. (R. 160-61 and 165). The pain is so severe it can make him cry. (R. 165). Plaintiff rated his pain as "moderately severe" or ranging from a seven to a ten on a ten-point scale. (R. 167-168). Pain and medications cause uncoordination [sic], trembling, shaking, and concentration difficulties. (R. 169).

(Doc. # 11, p. 5).

Not entirely unpersuaded, after correctly reciting the standard that the Eleventh Circuit Court of Appeals has established for evaluating a claimant's subjective complaints,[2] the ALJ stated in his opinion, "The claimant in his manner of giving testimony impressed this ALJ as extremely credible.  He made excellent eye contact and in every way sounded very sincere, honest and straightforward" (R. 23).  Nevertheless, the ALJ concluded that Johnson "simply does not have, and has not had since September 9, 2002, any medically determinable impairments which even in combination are reasonably capable of producing the symptoms alleged."  *Id.*[3]

To contest this conclusion, Johnson relies solely on medical records dated prior to 9 September, including the report of a consultative examination performed in February 2002, which demonstrate that Johnson suffered from severe hypertension (R. 98-101, 117; Doc. # 11, pp. 5-7).  Referring to the consultative examination, Johnson notes, "Dr. Schulman specifically indicated headaches were secondary to hypertension . . .."  (Doc. # 11, p. 5).

The ALJ's opinion thoroughly and accurately discusses this evidence but nevertheless concludes that the medical records dated after 9 September indicate that Johnson's hypertension had improved significantly and was under control (R. 25).  As the ALJ correctly concluded, aside from one notation suggesting the possibility of migraines (R. 117), for the

---

[2]*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986),

[3]This statement undercuts Johnson's second argument that the ALJ failed to consider his impairments in combination.

period following 9 September, the medical records simply do not confirm the severity of Johnson's claims or indicate the existence of a medically determinable impairment that reasonably could be expected to cause Johnson's alleged symptoms. The void in the evidence may explain Johnson's failure to cite to any. This reflects a correct application of the relevant standard. **Landry**, 782 F.2d at 1553.

Rather than relying on evidence, Johnson quibbles with the opinions of his treating doctors.

> On September 30, 2002, after the period that the ALJ asserts that Plaintiff's blood pressure was controlled, Plaintiff had a blood pressure reading of 156/90 and another blood pressure reading on the same day of 160/100 (R. 115).[4] It was noted that Plaintiff continued to have headaches and blurred vision. *Though it does state on the treatment form that Plaintiff's high blood pressure is "controlled," a blood pressure reading of 160/100 hardly seems controlled*.

(Doc. # 11, p. 7) (emphasis added).

Neither the ALJ nor this court may second guess the medical opinions provided by medical professionals without sufficient justification. Johnson's conclusion, premised apparently on what he perceives as common sense, fails to provide the requisite justification. The ALJ correctly applied the Court of Appeals's standard for evaluating Johnson's subjective complaints, and his conclusion that the medical record does not support Johnson's complaints is strongly supported by substantial evidence in the record.

---

[4]The record to which Johnson cites contains only one blood pressure reading, which was 156/90. The same page does contain a notation "160/100", but nothing on the page indicates that this was Johnson's blood pressure. Thus, Johnson's conclusion is speculative.

**D.     *Johnson's Impairments Combined***

In support of his argument that the ALJ failed to consider his impairments in combination, Johnson again relies on medical records dated prior to 9 September 2002 and fails to cite to any evidence of an impairment existing after 9 September that the ALJ failed to consider alone or in combination.

Notwithstanding Johnson's assertion to the contrary, the ALJ clearly considered his impairments in combination, as evidenced not only by the text of the ALJ's opinion quoted above[5] but also by the ALJ's summation of the testimony provided by a physician at the evidentiary hearing:

> Dr. Anderson provided the following testimony. The claimant's hypertension is now controlled. He does not this that [sic] the claimant has unstable angina.[6] His pulmonary function test show [sic] minimum defect and that is caused by his obesity. he would rate the claimant's headache pain as mild to moderate. The back cysts were treated and resolved. In his opinion, the claimant is limited to sedentary and light work activity.

(R. 21).

Thus, the ALJ performed his responsibilities as the Court of Appeals requires. ***Walker v. Bowen***, 826 F.2d 996, 1001 (11th Cir. 1987).

In conclusion, it is clear that the ALJ wrote his opinion with Johnson's interests at heart but was restrained in his decision making by the law and the evidence. Despite giving

---

[5] *See supra* note 2.

[6] This poorly worded sentence refers to the medical expert's conclusion that the consultative examiner incorrectly suggested the possibility that Johnson suffered from "acute unstable angina" (R. 101, 181).

9

Johnson the benefit of the doubt, the law, in turn, precluded the ALJ from awarding benefits for anything more than a closed period ending 9 September 2002. Johnson has failed to demonstrate that the ALJ committed legal error, and the ALJ's conclusions are supported by substantial evidence in the record.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the Commissioner's decision is AFFIRMED.

DONE this 25th day of April, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED   STATES   MAGISTRATE   JUDGE